# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 4, 2005          Decided June 3, 2005

No. 03-5370

MILTON JOSEPH TAYLOR,
APPELLANT

v.

UNITED STATES PROBATION OFFICE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
(USDC) for the District of Columbia
(No. 03cv02134)

———

*Paul S. Berman*, appointed by the court, argued the cause as *amicus curiae* in support of appellant.

*Milton J. Taylor*, *pro se*, was on the briefs of appellant.

*Megan L. Rose*, Assistant Attorney General, argued the cause for appellee United States Probation Office. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Stacy L. Anderson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee M.L. Brown. With her on the brief were

*Robert J. Spagnoletti*, Attorney General for the District of Columbia, and *Edward E. Schwab*, Deputy Attorney General.

Before: EDWARDS, ROGERS, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Milton J. Taylor appeals from the District Court's dismissal of his civil rights action for damages arising out of his allegedly unlawful confinement at the District of Columbia Central Detention Facility ("CDF"). Taylor does not challenge any conviction or sentence. Rather, he contends that his placement at CDF was unlawful in light of orders of the federal District Court and the local Superior Court prescribing that he be confined at a halfway house.

Before responsive pleadings were filed, the District Court, on its own motion pursuant to 28 U.S.C. § 1915(e)(2) (2000), dismissed the case for failure to state a claim. The court concluded that Taylor had failed to satisfy the so-called "favorable-termination" or "prior-invalidation" requirement of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which bars actions under 42 U.S.C. § 1983 (2000) seeking "damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff "can demonstrate that the conviction or sentence has already been invalidated."

We reverse. *Heck* and subsequent Supreme Court decisions make it clear that *Heck*'s application is limited to suits that, if successful, would necessarily imply the invalidity of the plaintiff's conviction or sentence, *i.e.*, suits challenging the fact or duration of confinement. Because Taylor's complaint challenges only the fact that he was confined at one facility rather than another and, thus, does not challenge the fact or duration of his confinement, the rule of *Heck* is inapplicable.

## I. BACKGROUND

In June 2001, following an allegation that Taylor had violated the terms of his supervised release imposed after a prior criminal conviction, *see United States v. Taylor*, Crim. No. 97-0035 (D.D.C. Nov. 14, 1997), the District Court revoked the supervised release and sentenced Taylor "to be imprisoned for a term of . . . SIX (6) months to be served in Hope Village Halfway House for intensive residential drug counselling and treatment." *United States v. Taylor*, Crim. No. 97-0035 (D.D.C. June 19, 2001), *reprinted in* App. of Court-Appointed Amicus Curiae ("App.") at 3. Taylor was directed to surrender himself to the halfway house when space became available and to report to his probation officer for drug testing in the interim. *Id.*

On July 31, 2001, before space had become available at the halfway house, Taylor was arrested and charged in the District of Columbia Superior Court with an unrelated drug offense. Three days later, the Superior Court ordered that Taylor be released to a halfway house on work release pending trial. Pursuant to this order, Taylor was transferred from CDF (where he had been confined since his arrest) to a local halfway house.

On August 14, while Taylor was at the halfway house, the United States Marshals Service issued a detainer against Taylor to the District of Columbia Department of Corrections. *See* United States Marshals Service Detainer of 8/14/2001, *reprinted in* App. for Appellee Brown ("Supp. App.") at 1. "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent. Detainers generally are based on outstanding criminal charges, outstanding parole- or probation-violation charges, or additional sentences already imposed against the prisoner." *Carchman v. Nash*, 473 U.S. 716, 719 (1985) (citations omitted).

The detainer at issue in this case requested the Department of Corrections to notify the Marshals Service when Taylor was released from the Department's custody, so that the Marshals could take Taylor into custody. *See* Detainer, Supp. App. at 1. The detainer referenced the docket number of Taylor's criminal case in the District Court and included the following notation: "6 Mths Halfway House." *See id.* On August 15, however, the day after the detainer was issued, Taylor was removed from the halfway house and taken to CDF, where he remained until January 2002. It is unclear whether Taylor was taken from the halfway house by the U.S. Marshals, local authorities, or others. Nor is it clear at whose direction and on what authority Taylor was moved.

In October 2001, Taylor filed two actions in the District Court challenging his confinement at CDF as inconsistent with the Superior Court's order that he be placed in a halfway house pending his local trial and the District Court's order that he serve his federal sentence at a halfway house. Taylor sought damages as well as his release back to the halfway house. The District Court construed both actions as petitions for habeas corpus, and, because Taylor had been released by the time the petitions were considered, dismissed the petitions as moot on September 27, 2002. *See Taylor v. U.S. Prob. Office*, Civil Nos. 01-2132, 01-2133 (D.D.C. Sep. 27, 2002), *reprinted in* App. at 5-8. It appears that Taylor did not appeal these dismissals.

In September 2003, Taylor commenced the instant civil action for money damages against the CDF warden, the U.S. Probation Office, and his federal probation officer. Taylor's complaint alleges that the defendants unlawfully detained him at CDF in violation of the orders of the District Court and Superior Court.

Before responsive pleadings were filed, the District Court dismissed the case on its own motion pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring court to dismiss *in forma pauperis*

action "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted"). The court concluded that Taylor's claim "goes to the fact or duration of his confinement," and was therefore barred under *Heck* because Taylor had not established prior invalidation. *See Taylor v. United States Prob. Office*, Civil No. 03-2134 (D.D.C. Oct. 16, 2003), *reprinted in* App. at 14-16.

This appeal followed. Professor Paul Schiff Berman was appointed by the court as *amicus curiae* to present arguments in support of Taylor's position.

## II. ANALYSIS

As noted above, the District Court dismissed Taylor's action pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted. We review such dismissals *de novo. See Davis v. Dist. of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998). Dismissal for failure to state a claim is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). We must accept all of the factual allegations in the complaint as true and give Taylor the benefit of all inferences that can reasonably be drawn from those allegations. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). We also remain mindful that complaints filed by *pro se* plaintiffs, like Taylor, are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

The gravamen of Taylor's complaint is that his confinement at the CDF location rather than at a halfway house was unlawful, because it contravened the orders of the District Court and the Superior Court. The District Court concluded that this claim "goes to the fact or duration of his confinement" and, thus, that Taylor was required under *Heck* to establish that his "conviction

or sentence ha[d] already been invalidated," *see Heck*, 512 U.S. at 487. Because Taylor made no such showing, the District Court dismissed the case. We hold that the District Court erred in dismissing this action, because, as we explain below, Taylor's claim is not subject to *Heck*'s prior-invalidation requirement.

\* \* \* \*

In *Heck*, a state prisoner brought an action for damages pursuant to § 1983, challenging the conduct of state officials who, the prisoner alleged, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence. *Heck*, 512 U.S. at 478-79. Pointing to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," the Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87 (footnote omitted); *see also Williams v. Hill*, 74 F.3d 1339, 1340-41 (D.C. Cir. 1996) (per curiam) (holding that the *Heck* rule also applies to claims under the cause of action created in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).

The *Heck* Court made it clear that this requirement of prior invalidation in § 1983 actions applies only if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. If, on the other hand, "the plaintiff's action, even if successful, will *not*

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

This limitation on *Heck*'s applicability has been preserved by subsequent Supreme Court decisions. Just last year, the Supreme Court reaffirmed that "*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam); *see also Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence."). And we have observed that this limitation creates a "clear line between challenges to the fact or length of custody," which amount to a collateral attack on the plaintiff's conviction or sentence, "and challenges to the conditions of confinement," which have no implication regarding the lawfulness of the plaintiff's conviction or sentence. *Brown v. Plaut*, 131 F.3d 163, 168 (D.C. Cir. 1997); *see also Dotson*, 125 S. Ct. at 1248 (stating that *Heck* bars a state prisoner's § 1983 action, absent prior invalidation, *only if* "success in that action would necessarily demonstrate the invalidity of confinement or its duration").

\* \* \* \*

Applying these principles, it is abundantly clear that *Heck*'s favorable-termination requirement is not implicated by Taylor's complaint. If Taylor succeeds in his action, this will demonstrate nothing more than the unlawfulness of his placement at the CDF location instead of a halfway house. Success in this case will in no way imply that *any* confinement of Taylor was invalid or that the duration of his confinement should have been shorter. Thus, *Heck*'s concerns regarding collateral attacks on criminal judgments are not in play here.

Indeed, far from attacking the federal and local court orders sentencing and remanding him to a halfway house, Taylor argues that his placement in CDF was unlawfully *inconsistent* with those orders. He is not challenging the validity of the orders themselves.

It does not matter that the claims underlying Taylor's action, although not implying the invalidity of the court orders, might imply the invalidity of whatever administrative determination prompted his removal from the halfway house to CDF, for it is clear that "the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction." *Muhammad*, 540 U.S. at 751 n.1; *see also Brown*, 131 F.3d at 168 ("One of the Court's principal concerns in *Heck* was to limit collateral attacks on final judgments; but a proceeding that is incapable of giving rise to collateral estoppel, like that at issue in this case, hardly needs to be insulated from collateral attack." (citation omitted)). Thus, Taylor's action is properly characterized as a challenge to a condition (namely, the location) of his confinement, and not its fact or duration.

Appellees argue at length that a challenge to Taylor's confinement would have been properly cognizable in habeas. This is obviously beside the point. It may well be that habeas is available where a prisoner alleges that he "is unlawfully confined in the wrong institution," *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973) (citing *In re Bonner*, 151 U.S. 242 (1894), and *Humphrey v. Cady*, 405 U.S. 504 (1972)), or "is being unlawfully detained by the Executive," *id.* (citing *Parisi v. Davidson*, 405 U.S. 34 (1972)), but this is not the question under *Heck*. Rather, *Heck* specifically limited its application to damages actions that, if successful, "would necessarily imply the invalidity of [the plaintiff's] *conviction or sentence.*" *Heck*, 512 U.S. at 487 (emphasis added); *cf. also Brown*, 131 F.3d at 168-69 ("Habeas corpus might conceivably be available to bring challenges to such prison conditions . . . but *requiring* the use of

habeas corpus in such cases would extend *Preiser* far beyond the 'core' of the writ that *Preiser* set out to protect.").

Finally, there is no merit to appellees' argument that Taylor's use of phrases like "illegal confinement" and "unconstitutional sentence" in his pleadings suggests that he is challenging the fact of his confinement. Taylor's *pro se* complaint is more faithfully read as challenging only the fact that he was confined at CDF instead of a halfway house. The complaint challenges neither the legality of any conviction or sentence, the fact of his incarceration, nor the length of his incarceration. Rather, the complaint challenges a condition of confinement – *i.e.*, placement at the CDF location rather than at a halfway house – so his action is not subject to *Heck*. *See Brown*, 131 F.3d at 168 (noting the clear "distinction between challenges to the fact or length of custody and challenges to conditions of confinement").

In sum, on the record at hand, we hold that Taylor's complaint lies outside of *Heck*'s ambit. There appears to be no dispute that the judgment of the District Court, the order of the Superior Court, and the U.S. Marshals Service Detainer all specified that Taylor was to be in custody at a halfway house, but that he was removed from a halfway house and confined at CDF. Taylor alleges that he suffered cognizable injury as a result of this action. Appellees may have valid defenses to these claims. For example, the federal appellees claim that the Probation Office played no role in the issuance or execution of the detainer. But any such defenses are properly addressed upon consideration of the merits of Taylor's action. We express no view on the merits. We hold only that, in light of *Heck*'s inapplicability, there is nothing on the face of Taylor's complaint that justified the District Court's summary dismissal of the case at this stage of the proceedings.

### **III. Conclusion**

For the foregoing reasons, the judgment of the District Court is reversed. The case is remanded for further proceedings.

*So ordered.*